FILED

2022 Jun-06  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| JACLYN MICHELLE RAMSEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.   4:20-cv-01438-HNJ |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Jacklyn Ramsey seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability, disability insurance, and supplemental security income benefits.   The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 15).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. §§ 404.1505(a), 416.905(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.   *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).   Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."   *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02.   *Id.* at §§ 404.1520(d), 416.920(d).   If a claimant's impairment meets the applicable criteria at this step, that claimant's

2

impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20

C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g).   If the claimant can perform other work, the evaluator will not find the claimant disabled.   *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).   If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"   *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)).   Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." . . .   "Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'"
*Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even
if the evidence preponderates against the Commissioner's decision.   *Moore v. Barnhart*,
405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Ramsey, age 37 at the time of the ALJ hearing, protectively filed applications
for a period of disability, disability insurance, and supplemental security income benefits
on April 30, 2018, alleging disability as of September 10, 2017.   (Tr. 34, 36, 239-48).
The Commissioner denied Ramsey's claims, and Ramsey timely filed a request for an
administrative hearing.   (Tr. 135-36, 176-78).   The Administrative Law Judge ("ALJ")
held a hearing on February 11, 2020 (Tr. 32-50), and issued an opinion on February 27,
2020, denying Ramsey's claim.   (Tr. 12-26).

Applying the five-step sequential process, the ALJ found at step one that Ramsey
did not engage in substantial gainful activity after September 10, 2017, her alleged onset
date.   (Tr. 17).   At step two, the ALJ found Ramsey manifested the severe impairments
of degenerative disc disease, degenerative joint disease of the right knee, coronary artery
fistulas, mitral valve prolapse, ventricular tachycardia, anxiety disorder, and depression.
(*Id.*).   At step three, the ALJ found that Ramsey's impairments, or combination of
impairments, did not meet or medically equal any impairment for presumptive disability
listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 19).

5

Next, the ALJ found Ramsey exhibited the residual functional capacity ("RFC")

> to perform sedentary work as defined in the regulations, with the following additional limitations: The claimant can occasionally climb ramps or stairs and cannot climb ladders, ropes, and scaffolds. She is limited to frequent kneeling, crouching, and crawling. The claimant can occasionally be exposed to weather, humidity, extreme cold, and extreme heat. She cannot be exposed to workplace hazards such as moving mechanical parts and high, exposed places. The claimant is capable of unskilled work, which is defined as work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time of thirty days or less. The claimant is limited to occasional interaction with the public and with co-workers.

(Tr. 20-21).

At step four, the ALJ determined Ramsey could not perform her past relevant work as a housekeeper and companion. (Tr. 24). However, at step five, the ALJ determined Ramsey could perform a significant number of other jobs in the national economy considering her age, education, work experience, and RFC. (Tr. 25). Accordingly, the ALJ determined that Ramsey has not suffered a disability, as defined by the Social Security Act, since June 6, 2018. (Tr. 26).

Ramsey timely requested review of the ALJ's decision. (Tr. 236-38). On August 12, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-6). On September 28, 2020, Ramsey filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

6

**ANALYSIS**

In this appeal, Ramsey argues the ALJ improperly considered the opinion of consultative psychologist Dr. Samuel Fleming and posed a hypothetical question to the vocational expert that did not include all of her impairments.   For the reasons discussed below, the undersigned concludes those contentions do not warrant reversal.

**I.     The ALJ Properly Considered the Consultative Psychological Examiner's Opinion**

Ramsey first asserts the ALJ improperly considered the opinion of consultative psychological examiner Samuel Fleming, Ph.D.   For the following reasons, the court disagrees and finds that the ALJ properly considered Dr. Fleming's opinion.

On January 18, 2017, the Commissioner revised the regulations governing the assessment of medical opinion evidence for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1520c, 416.920c).   Ramsey's claims, filed on April 30, 2018, fall under the revised regulations.

Pursuant to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(a).   Rather, the ALJ must apply the same factors in the consideration of all medical opinions and administrative medical

findings, rather than affording specific evidentiary weight to any particular provider's opinion.   *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be."   20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations.   20 C.F.R. §§ 404.1520c(c)(3)(i)-(iv), 416.920c(c)(3)(i)-(iv).   The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file.   20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).   The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to, "evidence showing a medical source has

8

familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."   20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

Dr. Fleming performed a mental status examination on July 25, 2018, at the request of the Commissioner.   Ramsey reported experiencing depression for the past eight to ten years.   She cried at work and "could not deal with other people."   (Tr. 856).   She had not received mental health treatment because she "was 'too afraid to go.'"   (*Id.*).   Rather, her medical doctor treated her mental health symptoms with medication, but she did not find the medication effective, as she continued to experience crying spells, social withdrawal, feelings of worthlessness, and feelings that "the world is against her."   (*Id.*).   She denied any history of emotional, physical, sexual, or substance abuse.   (Tr. 856-57).

Ramsey presented to the examination with adequate hygiene, normal mannerisms and motor activity, and adequate cooperation.   She did not display any evidence of mania, but she reported symptoms of depression including insomnia, restlessness, variable appetite, low energy, low motivation, daily crying spells, and daily blue spells.   She denied suicidal ideation or intent.   (Tr. 857).

During the clinical examination, Ramsey displayed full orientation to place, person, time and situation.   She displayed deficient concentration and attention, as she could not perform serial 7's.   She displayed marginally adequate immediate recall of

digits, as she could remember five digits forward and thee digits backward.   However, she could recall five of five objects, and she displayed adequate recent memory, as she could state her birth date, telephone number, and address.   She displayed deficient delayed recall, as she could recall only two of five objects within five to ten minutes. (*Id.*).

She possessed an adequate fund of information, as she could name the United States President and the number of weeks in a year.   But she displayed only marginally adequate abstraction abilities, as she could not explain the proverb "two wrongs don't make a right."  (Tr. 857-58).  She demonstrated no evidence of blocking, muteness, repetitions, flight of ideas, loosening of associations, tangentiality, circumstantiality, or confusion.   Her thought content included no hallucinations, delusions, or ideas of reference.   She reported phobias of dark places, dying, and doctors, and possessed obsessive-compulsive tendencies about keeping things in their proper places.   (Tr. 858).

Ramsey displayed deficient judgment and insight.   Though she acknowledged experiencing problems with depression, she did not accept responsibility for those problems, and she did not recognize the benefits of mental health assistance.   Dr. Fleming estimated Ramsey functioned in the low average range of intellectual ability. (*Id.*).

10

Ramsey displayed appropriate affect.  She reported symptoms of generalized anxiety, including feeling anxious when she drops things, feeling as though she is smothering, and panicking.  She reported performing routine household chores, but those tasks take an excessive amount of time due to her lack of energy.  She had no hobbies, did not engage in social activities, and did not date.  (*Id.*).

Dr. Fleming assessed Ramsey with major depression, recurrent, moderate; and panic order with agoraphobia.  He also assessed social interaction problems, and he assigned a GAF score of 55, indicating moderate symptoms.  He opined Ramsey reflected a poor prognosis as she did not receive adequate treatment for her depression. He also opined Ramsey could manage financial benefits.  She could understand and carry out instructions, but she would experience difficulty remembering them due to problems with delayed recall.  She could not respond appropriately to supervision, coworkers and work pressures in the work setting.  (Tr. 858-59).

The ALJ considered Dr. Fleming's opinion "partially persuasive because it is supported by clinical observations and an analysis, but it includes limitations, such as inability to respond appropriately to supervision, co-workers and daily stressors, that overstate the severity of the claimant's limitations and are inconsistent with treatment records." (Tr. 23-24).

Ramsey asserts the ALJ failed to accord proper weight to Dr. Fleming's opinion, failed to state with at least "some measure of clarity" the grounds for rejecting Dr.

11

Fleming's opinion, and wrongly rejected the only evidence in the record from a mental health professional.   But the 2017 revised regulations forestall Ramsey's arguments, as they do not require the ALJ to afford deference to any physician's opinion.   The ALJ properly applied the revised regulations by assessing the consistency of Dr. Fleming's opinions with the remainder of the treatment record, and by considering whether Dr. Fleming's clinical observations and analysis supported his opinions.   *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In any event, the ALJ clearly stated his reasons for rejecting Dr. Fleming's opinion.   In addition to articulating the explanation quoted above, the ALJ discussed Ramsey's mental health symptoms when assessing whether her impairments satisfied a listing.   He stated Ramsey experienced moderate limitation in the ability to understand, remember, and apply information, as follows:

> In [a] June 2018 function report . . ., [Ramsey] stated that she set alarms as reminders for personal care and medications.   She also stated that she was able to follow written instructions but needed to write down spoken instructions.   However, at a July 2018 consultative mental evaluation . . ., the claimant's memory functions other than delayed recall were intact. She also [has] been able to provide information about her personal history and health to medical providers and Social Security.   The claimant's abilities and activities indicate that she is able to learn, recall, and use information to perform work activities.

(Tr. 19).

The ALJ also opined Ramsey experienced moderate limitation in the ability to interact with others:

12

She reported no problems getting along with family members and authority figures, but she stated that people in public got on her nerves and she preferred to stay to herself. The claimant was noted as cooperative at the consultative examination, and she has been able to interact successfully with medical providers and staff. The claimant's activities and abilities indicate that she is capable of relating to and working with supervisors, co-workers, and the public.

(*Id.*).

The ALJ opined Ramsey experienced moderate limitation in the ability to concentrate, persist, or maintain pace:

She reported difficulty concentrating and completing tasks; and the consultative psychologist noted that the claimant could not perform serial 7s and had difficulty maintaining attention and concentration. However, the claimant reported that she was able to drive at least occasionally, shop for several hours once a month and manage money, which are activities that indicate sustained attention and thought. The consultative psychologist noted that the claimant was alert and attentive; and she has been able to handle her own medical care. The claimant's activities and abilities indicate that she is able to focus attention and stay on task at a sustained rate.

(Tr. 20).

The ALJ also opined Ramsey experienced moderate limitation in the ability to adapt or manage herself:

She reported that she was able to handle personal care without assistance from others. She stated that she could not handle stress but she was able to handle changes. There is no evidence of anger episodes or altercations; and medical records show no problems interacting with a variety of medical providers. The claimant's activities and abilities indicate that she is capable of regulating emotions, controlling behavior, and maintaining well-being in a work setting.

13

(*Id.*).

> When summarizing Ramsey's medical evidence, the ALJ stated she

> has been assessed with anxiety and depression . . ., which have been
> treated with Celexa, Buspar, and Klonopin prescribed by her primary care
> physician . . . .   The claimant has occasionally reported depression and
> anxiety to other medical providers . . ., and records occasionally note
> depressed affect, anxiety, or mood swings . . . .   However, most of the
> claimant's records indicate normal mood, affect, and memory.   There is
> no evidence of specialized mental health care or inpatient treatment.

(Tr. 22).

The ALJ accounted for Ramsey's deficiencies in handling information and maintaining concentration, persistence, and pace by limiting her to unskilled work and simple duties.   He accounted for her social function limitations by limiting her to occasional contact with co-workers and the public.   However, he did not limit her contact with supervisors because Ramsey did not report any difficulty getting along with authority figures.   To account for Ramsey's adaptation deficiencies and to reduce stress, he limited her to unskilled work that requires little or no judgment to accomplish. (Tr. 24).

Substantial record evidence supports the ALJ's assessments, and the record as a whole supports his decision to consider Dr. Fleming's opinion only partially persuasive. Ramsey stated in her function report that she could pay bills, count change, handle a savings account, and use a checkbook, indicating the ability to process and organize information.   She reported very little social activity, but she could pay attention for

14

short periods, follow written instructions "ok," and get along with authority figures "pretty good."   She had never lost a job because of conflicts with others, and she did not experience any unusual fears or behaviors.   She can handle changes in routine "ok," but she cannot handle stress at all.  (Tr. 295-98).  The ALJ accounted for those self-reported limitations by imposing restrictions like unskilled work, simple duties, and occasional contact with co-workers and the public.

In addition, the record does not contain any records from specialized mental health treatment.   Rather, Ramsey received medication for depression and anxiety from her primary care provider.  (Tr. 502-771, 1012-1251, 1266-1345, 1457-88). Physical examinations reflected reports of anxiety, depression, and mood swings, but no other significant mental health findings.  (Tr. 514, 517, 527, 530, 540, 543, 554, 557, 571, 578, 585, 588, 598, 611, 613, 625, 627, 638, 640, 652, 655, 669, 671, 684, 686, 701, 709, 720, 723, 736, 739, 751, 754, 764, 781, 785, 788-89, 792, 876, 880, 884, 899, 902-03, 908, 923, 942, 967, 990, 994-95, 1009-10, 1025, 1028, 1041, 1044, 1057, 1060, 1073, 1076, 1090, 1092, 1105, 1108, 1121, 1124, 1137, 1140, 1153, 1156, 1170, 1172, 1185, 1188, 1201, 1204, 1217, 1220, 1233, 1236, 1249, 1266, 1279, 1282, 1295, 1298, 1312, 1314, 1327, 1330, 1344, 1347, 1350, 1353, 1362, 1376-77, 1380, 1397, 1454-55, 1457, 1470, 1473, 1486).

Ramsey argues the court should apply a higher standard to review the ALJ's decision to reject the opinion of a consulting medical professional the Social Security

Administration retained, but he bases his contention upon a Seventh Circuit case, *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995), that the Eleventh Circuit has repeatedly declined to follow.  *See, e.g., Jones v. Soc. Sec. Admin., Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021); *Hand v. Social Security Administration,* 786 F. App'x 220, 226 (11th Cir. 2020); *Jackson v. Social Security Administration, Comm'r,* 779 F. App'x. 681, 685 (11th Cir. 2019); *Arnold v. Social Security Administration,* 724 F. App'x. 772, 779 n.3 (11th Cir. 2018).  Ramsey characterizes those cases as merely distinguishing *Wilder*, not rejecting it, but in *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681 (11th Cir. 2019), the Eleventh Circuit specifically "decline[d] [the claimant's] invitation to adopt the standard set forth by the Seventh Circuit in *Wilder*," as the Eleventh has "articulated [its] own standard for reviewing the opinions of agency-appointed consulting physicians."  *Id.* at 685.

Finally, Ramsey argues the Commissioner impermissibly seeks to impeach the testimony of an expert witness it retained.  She cites Alabama case law for the general proposition that a party cannot impeach its own witness.  *See Holloway v. Robertson*, 500 So. 2d 1056, 1061 (Ala. 1986) (citing *Cone v. Ragan*, 288 Ala. 352, 354, 261 So. 2d 28, 30 (1972)) ("The usual rule is that, when a party places a witness on the stand, he thereby vouches for his credibility, and cannot impeach his own witness.").  That rule, of course, no longer represents Alabama law, much less federal law.  *See* Ala. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness." [Adopted effective January 1, 1996]); Fed. R. Evid. 607 ("Any party,

including the party that called the witness, may attack the witness's credibility.").[2]   In

any event, Alabama law bears no applicability in the context of evaluating Social Security

claims, as Social Security regulations state the Commissioner will not afford deference

to any medical opinion, including the opinion of a medical expert it retained.

In summary, the ALJ properly considered Dr. Fleming's consultative opinion,

and substantial evidence supported the ALJ's decision.

## II.    The ALJ Properly Relied Upon Vocational Expert Testimony

Ramsey also asserts the ALJ failed to include all of her impairments in the

hypothetical question he posed to the vocational expert.[3]   "'In order for a vocational

expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical

question which comprises all of the claimant's impairments.'"   *Forrester v. Comm'r of Soc.*

*Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (quoting *Wilson v. Barnhart*, 284 F.3d 1219,

1227 (11th Cir. 2002) (per curiam)).   However, "'the ALJ is not required to include

---

[2]  *See also* Ala. R. Evid. 607 advisory committee note:

> Historically, one calling a witness has been held to vouch for that witness's credibility;
> consequently, the courts generally have refused to permit impeachment by the party
> calling the witness. *Holloway v. Robertson*, 500 So.2d 1056 (Ala.1986) . . . .   Rule 607,
> adopted verbatim from the corresponding Federal Rule of Evidence, abandons the
> voucher rule and is based upon the premise that a party regularly calls whichever
> witnesses are available and, consequently, does not vouch for their credibility or
> otherwise hold them out as worthy of belief. Rule 607 allows any party to impeach any
> witness.

[3]  Ramsey also asserts "[t]he decision to deny benefits was not based on substantial evidence because
ALJ Guthrie gave only partial weight to the Commissioner's examining psychologist.   (Doc. 17, at
28).

17

findings in the hypothetical that the ALJ has found to be unsupported.'" *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

The ALJ's hypothetical question to the vocational expert mirrored his residual functional capacity finding.   (Tr. 20-21, 45-46).   Ramsey asserts that the question failed to account for her degenerative disc disease, right knee degenerative joint disease, coronary artery fistulas, mitral valve prolapse, ventricular tachycardia, anxiety disorder, depression, knee surgery, and congestive heart failure.   But reciting conditions Ramsey experienced does not persuade the court, as the functional effect of a claimant's impairments, not the mere existence of the impairments themselves, governs the disability determination.   *See Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation.   However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability.").

18

To accommodate Ramsey's impairments and avoid exacerbating her pain, fatigue, and shortness of breath, the ALJ limited her to sedentary exertion with additional postural and environmental limitations.  He precluded climbing at heights and exposure to workplace hazards to accommodate the distractive effect of pain, fatigue, mental symptoms, and medication side effects.  He limited her to unskilled work and simple duties to accommodate her difficulty handling information and maintaining persistence or pace.  He limited her to occasional contact with co-workers and the public because her mental symptoms impaired her social functioning.  He limited her to unskilled work that requires little or no judgment to accommodate limitations in adaption and reduce job-related stress.  (Tr. 24).  All of those limitations could accommodate the conditions Ramsey described, and she failed to explain any additional limitations the ALJ should have added to the hypothetical question. Moreover, the court cannot discern from the record any limitations the ALJ could have included that would change the disability finding, other than those limitations the ALJ properly considered unsupported.

Accordingly, the court concludes the ALJ included all of Ramsey's impairments in the hypothetical question to the vocational expert, and he properly relied on the vocational expert's testimony.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

The court will enter a separate final judgment.

**DONE** this 6th day of June, 2022.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE